# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| LORETTA A. KIRCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12-cv-5115-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER REMANDING CASE TO COMMISSIONER FOR FURTHER PROCEEDINGS

Plaintiff Loretta Kirch ("Kirch") seeks judicial review of the Commissioner of Social Security's ("Defendant's") denial of her applications for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and supplemental security income ("SSI") based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. The Administrative Law Judge ("ALJ") found Kirch had multiple severe impairments but retained the residual functional capacity ("RFC") to perform work as an order clerk, telephone quotation clerk, and patcher.

The Court holds that the case must be REMANDED because the ALJ erred by failing to provide sufficient reasons for discounting the opinion evidence from Plaintiff's treating physician, Dr. David Tucker, M.D. ("Dr. Tucker").

**Factual and Procedural Background**

The medical record is summarized in the parties' briefs and is repeated here only to the extent necessary.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

Plaintiff filed her application for disability insurance benefits and SSI benefits on May 13, 2010, alleging a disability onset date of August 1, 2009. The Commissioner denied her applications at the initial claim level on September 21, 2010, and on October 13, 2010, Plaintiff requested a hearing with an ALJ. In July 2011, the ALJ held a hearing, and on August 25, 2011, he issued a decision holding Plaintiff was not disabled as defined in the Act.

Plaintiff appealed the denial to the Appeals Council of the Social Security Administration. On September 24, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**Standard of Review**

A federal court's review of the Commissioner of Social Security's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). The court must "defer heavily" to the Commissioner's findings and conclusions. *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the court might have decided the case differently were it the initial finder of fact. *Buckner*, 646 F.3d at 556.

## Analysis

In determining whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of not less than twelve months, 42 U.S.C. § 423(d), the Commissioner follows a five-step sequential evaluation process.[2] Plaintiff contends the ALJ erred at step four by: (1) failing to give controlling weight to Dr. Tucker's opinion; and (2) discounting her credibility.[3]

Plaintiff argues the ALJ improperly discredited the opinion of her primary physician, Dr. David Tucker, who treated Plaintiff over a three year period. Plaintiff contends that the ALJ was required to give controlling weight to Dr. Tucker's Physical Medical Source Statement ("PMSS")[4] and the Opinion Letter unless the ALJ found substantial inconsistencies between the record evidence and Dr. Tucker's opinion.[5] Defendant counters that the ALJ did not err because

---

[2] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

[3] Because the ALJ's error regarding Dr. Tucker's opinion requires remand, the Court declines to address the credibility issue.

[4] Dr. Tucker actually completed both a PMSS and a Mental Medical Source Statement ("MMSS"). R. at 365-66, 368-69. In his opinion, the ALJ gave "considerable weight" to the PMSS, R. at 19, but he gave "no weight" to the MMSS. R. at 20. On appeal, Plaintiff argues that the ALJ erred in failing to give controlling weight to the PMSS. Plaintiff, however, does not dispute that the ALJ properly rejected Dr. Tucker's MMSS.

[5] The Court uses the term "Dr. Tucker's opinion" to refer collectively to his July 8, 2011, Opinion Letter and his Physical Medical Source Statement ("PMSS"). Both documents evaluate Plaintiff's functional limitations in light of her neck and back aliments.

(1) he was not required to give controlling weight to Dr. Tucker's opinion because portions of the opinion conflicted with other record evidence; and (2) he gave Dr. Tucker's opinion substantial weight to the extent that it was consistent with other record evidence. The Court holds the ALJ erred by failing to explain why he discounted Dr. Tucker's opinion.

The ALJ should usually assign controlling weight to a treating physician's opinion if that opinion is well-supported by, and consistent with, other evidence in the record. *Myers v. Colvin*, 721 F.3d 521, 524 (8th Cir. 2013) (citing 20 C.F.R § 404.1527(c)(2)). A treating physician's opinion, however, "is entitled to controlling weight only to the extent it is consistent with medically acceptable clinical or laboratory diagnostic data." *Casey v. Astrue*, 503 F.3d 687, 692 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion is not afforded controlling weight when the opinion is "internally inconsistent… [or] where the physician's opinion [is] inconsistent with the claimant's own testimony." *Myers*, 721 F.3d at 525. Although an ALJ may discount a treating physician's opinion, the ALJ must provide a clear and well-reasoned statement explaining why he or she is discounting the opinion. *Brown v. Astrue*, 611 F.3d 941, 951 (8th Cir. 2010) ("When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so.") (internal quotations and citation omitted); *see McCadney v. Astrue*, 519 F.3d 764, 767 (8th Cir. 2008) (reversing and remanding ALJ decision when it was unclear if the ALJ discounted the consultative physician's opinion, and, if so, why).

Here, Dr. Tucker's opinion[6] appears to be based upon clinically acceptable medical data and consistent with the other record evidence. Rather than relying on Plaintiff's subjective complaints of pain, Dr. Tucker based his Opinion Letter and PMSS on acceptable medical data

---

[6] There is no dispute between the parties that Dr. Tucker qualifies as a treating physician under the regulations, and the ALJ acknowledged Dr. Tucker as such in his opinion. R. at 19.

such as Plaintiff's medical history, his physical examination of her, and a M.R.I. of her back and neck. R. at 366, 377.

His opinion also appears to be consistent with other record evidence. Dr. Tucker's treatment notes from August 25, 2008 until June 1, 2010, consistently documented neck and back aliments, including spondylosis and cervicaliga. R. at 255-335. Similarly, an August 16, 2010, X-ray of Plaintiff's neck and back revealed that she suffered from degenerative spondylosis in both her cervical and lumbar spine. R. at 346-47. Plaintiff's testimony also bolsters Dr. Tucker's opinion. Plaintiff testified that due to her back and neck problems she was limited to only working two days a week, her medication only mildly and temporarily mitigated her pain, and she experienced difficulty in performing household activities. R. at 31, 36-37, 38-40.

Dr. Tucker's opinion was also arguably consistent with the observations of the consulting physician Dr. William S. Hughes, D.O. During his consultative examination, Dr. Hughes noted that Plaintiff exhibited pain in the C5 through C7 discs of her cervical spine and the L4 through L5 discs of the lumbar spine. R. at 342. Similarly, Dr. Tucker's treatment notes from April 27, 2011, and the Opinion Letter discuss problems with Plaintiff's cervical and lumbar spine. R. at 371, 377. These observations are corroborated by Plaintiff's M.R.I., which revealed disc protrusions from C5 through C7 and bulging discs at L4 through L5. R. at 374-75. On the issue of functional limitations, both Dr. Hughes and Dr. Tucker opined that Plaintiff was limited in her ability to walk, stand, or lift objects. R. at 343, 365-66, 377.

The doctors' opinions differ only with respect to Plaintiff's ability to sit and the effectiveness of her pain medication. Dr. Hughes stated that sitting "would probably not pose a problem," R. 343, whereas Dr. Tucker opined that Plaintiff could only sit for up to two hours a day. R. at 365. As for Plaintiff's pain medication, Dr. Hughes found that medication partially

5

alleviated Plaintiff's pain, R. at 341, while Dr. Tucker found that even with medication, Plaintiff's pain from her back and neck aliments significantly limited her ability to function. R. at 364-66, 371, 377.

These observations are not actually inconsistent. On July 1, 2010, Plaintiff saw Dr. Tucker for a follow-up visit because of increasing back pain. R. at 362. Dr. Tucker's treatment notes reveal that Plaintiff's condition had worsened and started to affect her ability to perform "normal activities." R. at 362. Accordingly, he increased her pain medication dosage. *Id.* Shortly thereafter, on July 27, 2010, Dr. Hughes conducted his consultative examination of Plaintiff in which he found that "[her pain was] relieved with pain medication." R. at 341. Nearly one year later, on April 27, 2011, Dr. Tucker noted that Plaintiff's condition had significantly worsened, and he ordered an M.R.I. of Plaintiff's back and increased her pain medication. R. at 371. At the same visit, Dr. Tucker evaluated Plaintiff and completed a PMSS listing a number of restrictions, including the two-hour sitting limitations. R. at 365-66.

These records show that Plaintiff suffered from back and neck aliments that steadily worsened over time and became increasingly resistant to pain medicine. Dr. Tucker's increase of Plaintiff's medication on July 1, 2010, temporarily alleviated her pain, which resulted in Dr. Hughes finding on July 27, 2010, that sitting would probably not pose a problem for Plaintiff and that taking pain medication alleviated her pain. However, Dr. Hughes' July 27, 2010, examination notes foreshadowed the potential for Plaintiff's condition to worsen. He remarked that "[c]ertainly, with her history[,] things such as standing, walking, lifting and carrying may prove difficult and may exacerbate her chronic low back problems." R. at 343. Consistent with this prediction, Dr. Tucker's PMSS and Opinion Letter, which were completed approximately one year after Dr. Hughes' examination, reveal that Plaintiff's condition had continued to worsen

6

causing more pain and giving rise to a functional limitation on Plaintiff's ability to sit. Thus, Dr. Hughes' opinion is arguably consistent with Dr. Tucker's opinion

Since Dr. Tucker's opinion was based upon legitimate clinical data and it was consistent with other record evidence, the ALJ should have provided a more thorough explanation for why he discounted Dr. Tucker's opinion in determining Plaintiff's physical functional limitations.[7] *See Brown*, 611 F.3d at 951 (holding that ALJ must give "good reasons" for discounting treating physician's opinion). After reciting the law on the weight afforded to treating sources, the ALJ failed to explain why he discounted Dr. Tucker's opinion. As regards the discounting of the PMSS, the ALJ stated "the opinion of Dr. Tucker, M.D. is credited, and afforded considerable weight, to the extent that it allows for a wide range of sedentary work." R. at 19. With respect to the treatment notes from July 1, 2010 and the Opinion Letter from July 8, 2011, the ALJ remarked that "[t]o the extent the opinions are consistent with the finding that the claimant is capable of performing sedentary work, they are afforded some weight." R. at 19. Such a cursory explanation does not qualify as a "good reason" for discounting Dr. Tucker's opinion.[8]

Finally, the Court cannot dismiss the ALJ's failure to discuss his basis for discounting Dr. Tucker's opinion as a mere deficiency in opinion writing. *See Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) ("We have held that an arguable deficiency in opinion-writing technique does not

---

[7] The ALJ, however, was not required to give any weight to Dr. Tucker's opinion regarding the ultimate issue of disability. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the commissioner to make the ultimate disability determination."). Consequently, the ALJ was free to disregard Dr. Tucker's treatment notes from July 1, 2010 and his Opinion Letter to the extent that these documents stated Plaintiff was unable to work. R. at 362, 377. Likewise, the ALJ was warranted in disregarding Dr. Tucker's MMSS, R. at 368-69, because as the ALJ explained in the opinion, other record evidence significantly contradicted Dr. Tucker's opinion that Plaintiff suffered from psychological problems. R. at 20.

[8] Defendant argues that the ALJ properly discounted Dr. Tucker's opinion because the opinion of Dr. Hughes "was more fully supported by the other evidence in the record." The Defendant fails to provide any explanation of how the record evidence more fully supports Dr. Hughes' opinion. In fact, the ALJ never indicated this as a reason for discounting Dr. Tucker's opinion, nor did the ALJ suggest that Dr. Hughes' opinion was in some way inconsistent with Dr. Tucker's opinion. Rather, the ALJ seems to give "considerable weight" to both Dr. Tucker and Dr. Hughes' opinions. R. at 18-19.

require us to set aside an administrative finding when that deficiency had no bearing on the outcome.") (internal quotations and citation omitted). If the ALJ included in his RFC all the limitations described in Dr. Tucker's PMSS, he might have found that plaintiff was disabled. For instance, in response to the first hypothetical, which the ALJ purportedly based upon Dr. Tucker's PMSS, the vocational expert ("VE") testified that an individual with these limitations would be precluded from all competitive work. R. at 46-47. In the third hypothetical, which the ALJ eventually adopted as Plaintiff's RFC, he included some, but not all, of the limitations noted in Dr. Tucker's PMSS. R. at 47. Even though Dr. Tucker's PMSS limited Plaintiff to positions that only require occasional reaching and allowed her to lie down or recline every one to two hours, R. at 366, the ALJ's third hypothetical failed to place these limitations on Plaintiff's ability to work. R. at 47. In response, the VE testified that a person with Plaintiff's limitations could perform three positions, including order clerk, telephone quotation clerk, and patcher. R. at 48. Thus, the exclusion of the limitations in Dr. Tucker's PMSS was outcome determinative. Consequently, the ALJ should have explained why he excluded some of the limitations reported by Dr. Tucker.

## Conclusion

Because the ALJ failed to explain why he discounted Dr. Tucker's opinion, the Court finds that the ALJ erred. Accordingly, the Commissioner's decision is REMANDED for proceedings not inconsistent with this opinion.

**IT IS SO ORDERED.**

Date:     October 23, 2013               /s/ Greg Kays
                                          GREG KAYS, JUDGE
                                          UNITED STATES DISTRICT COURT